# N THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC<br>and<br>INTELLECTUAL VENTURES II LLC,<br><br>    Plaintiff,<br><br>v.<br><br>LENOVO GROUP LIMITED,<br><br>    Defendant. | Civil Action No. 6:23-cv-307<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT LENOVO GROUP LIMITED'S REPLY CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1
II. DISPUTED TERMS ....................................................................................................... 1
    A. '016 Patent ......................................................................................................... 1
        1. "processor configured to facilitate operation of the network device" '016 Patent, Claim 1 .............................................................. 1
        2. "The apparatus of claim 1, wherein the apparatus is a component within the network device" ('016 Patent, Claim 9) ................................ 4
    B. '140 Patent ......................................................................................................... 4
        1. Preamble ('140 Patent, Claim 1) ............................................................. 4
        2. "out-of-band connection means" ('140 Patent, Claims 1, 6, and 7) ....... 6
        3. "virtual management interface connection means" ('140 Patent, Claim 1) ................................................................................................. 7
        4. "protection means" ('140 Patent, Claim 11) ........................................... 9
        5. "monitoring means for monitoring the status of at least one computer network component" ('140 Patent, Claim 13) ...................... 10
        6. "monitoring means for monitoring the status of the network power supply" ('140 Patent, Claim 14) .............................................. 11
        7. "reporting means" ('140 Patent, Claim 14) .......................................... 12
        8. "means for monitoring connection attempts made through the management access controller" ('140 Patent, Claim 16) ...................... 13
        9. "said . . . remote users" '140 Patent, Claim 1 ...................................... 15
    C. '835 Patent and '439 Patent ............................................................................. 15
III. CONCLUSION .............................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allergan Sales, LLC v. Sandoz, Inc.*,
 935 F.3d 1370 (Fed. Cir. 2019)...................................................................................................3

*Arctic Cat Inc. v. GEP Power Prods., Inc.*,
 919 F.3d 1320 (Fed. Cir. 2019)...................................................................................................5

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,
 521 F.3d 1328 (Fed. Cir. 2008).....................................................................................10, 11, 13

*In re Berger*,
 279 F.3d 975 (Fed. Cir. 2002).....................................................................................................3

*Bicon, Inc. v. Straumann Co.*,
 441 F.3d 945 (Fed. Cir. 2006).................................................................................................2, 8

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
 289 F.3d 801 (Fed. Cir. 2002).....................................................................................................6

*HTC Corp. v. IPCom GmbH & Co., KG*,
 667 F.3d 1270 (Fed. Cir. 2012)...................................................................................................2

*Schumer v. Lab'y Comput. Sys., Inc.*,
 308 F.3d 1304 (Fed. Cir. 2002)...................................................................................................5

*Shoes by Firebug LLC v. Stride Rite Children's Grp., LLC*,
 962 F.3d 1362 (Fed. Cir. 2020)...............................................................................................4, 5

*SIMO Holdings Inc. v. H.K. uCloudlink Network Tech. Ltd.*,
 983 F.3d 1367 (Fed. Cir. 2021).................................................................................................15

*TomTom, Inc. v. Adolph*,
 790 F.3d 1315 (Fed. Cir. 2015)...............................................................................................5, 6

*Unwired Planet L.L.C. v. Google, Inc.*,
 660 F. App'x 974 (Fed. Cir. 2016) .............................................................................................4

*Williamson v. Citrix Online, LLC*,
 792 F.3d 1339 (Fed. Cir. 2015)......................................................................................... passim

**Statutes**

35 U.S.C. § 112, ¶ 6.............................................................................................................. passim

## I.   INTRODUCTION

Defendant Lenovo Group Limited ("LGL") submits this reply claim construction brief to construe terms of U.S. Patent Nos. 7,325,140, 7,623,439, 7,646,835, and 8,474,016.

## II.   DISPUTED TERMS

### A.   '016 Patent

#### 1. "processor configured to facilitate operation of the network device"
'016 Patent, Claim 1

| LGL's Proposed Construction | IV's Proposed Construction |
|---|---|
| Subject to § 112, ¶ 6<br>Function: "facilitating the operation of the network device"<br>Structure: Indefinite | Plain and ordinary meaning |

IV concedes that if the "network device" is part of the claim, then claim 1 is indefinite for lack of 112(6) support at least as to "processor. Specifically, IV has not disputed the fact that there is no corresponding structure in the specification for the network device "processor." Not can it as the specification does not provide sufficient structure for the generic processor term, thereby rendering the claims indefinite under *Williamson*. Dkt. 33 at 3-7. Recognizing the lack of structure for the processor, IV contrives an argument that the "processor configured to facilitate operation of the network device" is a non-limiting description of the intended environment. Dkt. 41 at 3. Indeed, in an effort to maintain the validity of this claim, IV makes the remarkable argument that none of the network device, the processor of the network device, the network interface, the second bus, and the remote administrator terms are elements of the claimed

> That which is claimed:
> 1. An apparatus, comprising:
> a processor configured to control one or more functions of a network device having a network interface, wherein the network device is configured to receive data requests and an encrypted form of management requests via the network interface, wherein the management requests are from a remote administrator;
> a first bus; and
> a bus controller coupled to the processor via the first bus, wherein the bus controller is also coupled to a second bus of the network device that is distinct from the first bus, wherein the bus controller is configured to receive the encrypted form of the management requests from the second bus, and to convey the encrypted form of the management requests to the processor via the first bus;
> wherein the processor is configured to decrypt the encrypted form of the management requests, wherein the network device includes a processor configured to facilitate operation of the network device, and wherein the processor of the apparatus is distinct from the processor included in the network device.

1

apparatus (Dkt. 41 at 3-4)—thereby reading out more than half of the claim language of claim 1 (shown above in green). IV asserts that though these physical structures are expressly described in the claims, they are superfluous non-limiting language describing only the intended environment. Dkt. 41 at 3.

IV has cited no case where a court has rendered meaningless nearly half of the claim language. Nor can it.[1] The Federal Circuit is clear that "[a]llowing a patentee to argue that physical structures and characteristics specifically described in a claim are merely superfluous would render the scope of the patent ambiguous, leaving examiners and the public to guess about which claim language the drafter deems necessary to his claimed invention and which language is merely superfluous, nonlimiting elaboration." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006). In *Bicon*, the claim at issue claimed an "emergence cuff member for use . . . during the procedure of placing an abutment on a root member . . . ; the abutment has a frusto-spherical basal surface portion." *Id.* at 949. Plaintiff argued that the claim should be limited to "emergence cuff member" and not an abutment. *Id.* at 948, 950. The Federal Circuit rejected this argument because if the abutment was not limiting, the claimed requirement that the "abutment has a frusto-spherical basal surface portion" would have no meaning. *Id.* at 948. The result should be the same here. Under IV's proposed construction, the structural requirements of the network device recited in the claim would have no meaning. IV's interpretation would require the public to "guess whether a detailed description of a structural feature in a claim is superfluous . . . and unnecessary to establish infringement." *Bicon*, 441 F.3d at 951.[2]

Unsurprisingly, IV's arguments also contradict the claims, the prosecution history, and the specification. Dkt. 41 at 4, n.3. As discussed below, dependent claim 9 which recites "the network device" would be rendered meaningless if the network device is not an element of the claim as IV

---

[1] *HTC Corp. v. IPCom GmbH & Co., KG* is inapposite. The dispute in *HTC* was whether the mobile station or the network, both recited in the preamble, implemented the six functions in the body of the claim, not whether those six functions are non-limiting descriptions of the intended environment as IV asserts here. 667 F.3d 1270, 1274 (Fed. Cir. 2012). Indeed, the Federal Circuit acknowledged that those six functions were limiting. *Id.* at 1277-78.

[2] Contrary to its arguments here, IV treated each of these limitations as limiting and not unclaimed intended environment in its infringement contentions. Ex. 8 at 3-10, 11, 14-15, 17-20.

argues. Moreover, during prosecution, the Applicant overcame the examiner's prior art rejections of claim 1 by adding the limitation at issue here: "wherein the network device includes a processor configured to facilitate operation of the network device, and wherein the processor of the apparatus is distinct from the processor included in the network device." Ex. 9 at 2, 8, 13. Adding this limitation "to avoid the prior art provides strong evidence of the materiality of the included limitation." *In re Berger*, 279 F.3d 975, 982-83 (Fed. Cir. 2002).[3] The specification further confirms this limitation is material to patentability: it describes a "primary function" of the claimed invention "is to provide for the separation of management data and user data within the device being managed" which is accomplished by having "a separate processor" for "[r]emote management functions." '016 Patent, 6:4-11. IV's arguments are an improper attempt to read out conditions material to patentability to change the substance of the invention. *See Allergan Sales, LLC v. Sandoz, Inc.,* 935 F.3d 1370, 1372-73 (Fed. Cir. 2019*)* (holding that two "wherein" clauses were limiting based on intrinsic record).

IV's proposed interpretation also reads out the purpose of the purported invention: remote management of a network device. *See, e.g.*, '016 Patent, 1:25-31 ("The present invention relates… to methods and apparatus for remote management"). Under IV's interpretation, a system would satisfy the limiting claim language if an administrator directly input a management request on the network device. Yet the '016 Patent teaches away from direct management "requiring physical access to the systems for general maintenance or troubleshooting and report" because it is "not practical" and cost "prohibitive, both in time and personnel." '016 Patent, 1:47-54. Instead, there is a "strong requirement to provide for remote management of network elements and servers"— which is the core of the purported invention. *Id.*, 1:51-53; Dkt. 41 at 1 ("[t]he claimed inventions . . . facilitat[e] remote and secure administration").

---

[3] Throughout the prosecution history, the Examiner and Applicant understood that the network device was a positively recited and thus limiting component of the apparatus. *See, e.g.*, Ex. 9 at 22-23 (Applicant acknowledging that the "network device" was "recited" in claim which issued as claim 1); Ex. 9 at 27-40 (examiner search results for "a network device receiving data requests and encrypted form of remote requests" and "network device having network interface" and "network device configured to receive data and encrypted form of requests").

3

IV has not disputed LGL's indefiniteness argument explained in its opening brief (Dkt. 33 at 3-7) that if the network device is found to be a limiting component in the claims, there is no corresponding structure, rendering the claims indefinite under *Williamson* and *WSOU*. The Court should reject IV's litigation-inspired claim construction contradicted by the plain language of the claim and the intrinsic record and find claim 1 of the '016 Patent indefinite.

2. **"The apparatus of claim 1, wherein the apparatus is a component within the network device" ('016 Patent, Claim 9)**

| LGL's Proposed Construction | IV's Proposed Construction |
|---|---|
| Indefinite | Plain and ordinary meaning |

IV does not dispute that claim 9 is indefinite if the network device is a limitation to the claims. IV's arguments with respect to claim 9 fail for the same reasons described above: they incorrectly assert that the network device is an unclaimed element. *Supra* § II.A.1. Indeed, claim 9, which recites only that "the apparatus is a component within the network device," would be rendered meaningless if the network device is not an element of the claim.

B.   **'140 Patent**

1. **Preamble ('140 Patent, Claim 1)**

| LGL's Proposed Construction | IV's Proposed Construction |
|---|---|
| Preamble is limiting | Preamble is not limiting |

The preamble provides antecedent basis for specific, essential structures of the claimed "remote device management communication system." IV's own cases confirm that if the preamble "recites essential structure or steps," it is given patentable weight. *Unwired Planet L.L.C. v. Google, Inc.*, 660 F. App'x 974, 986 (Fed. Cir. 2016) (quoting *Proveris Sci. Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1372 (Fed. Cir. 2014)). Indeed, the Federal Circuit has held that the antecedent basis of essential structure alone is sufficient to find a preamble limiting. *Shoes by Firebug LLC v. Stride Rite Children's Grp., LLC*, 962 F.3d 1362, 1368 (Fed. Cir. 2020). In

*Firebug*, the term "footwear" was recited in the preamble and served as the antecedent basis for that term in the body of the claim. *Id.* Because the body of the claim requires an illumination system be housed in the footwear recited in the preamble, the Federal Circuit held that the preamble was essential to understanding the structural limitations of the illumination system. *Id.* Similarly here, the preamble provides antecedent basis for required components of the distributed computer network in which the claimed "remote device management communication system" securely manages network devices. Thus, the preamble is essential to understanding the structural limitations of the claim.

IV does not dispute this. Nor does IV assert that the preamble only describes an intended use. *Arctic Cat Inc. v. GEP Power Prods., Inc.*, 919 F.3d 1320, 1328 (Fed. Cir. 2019) (holding that preamble is not limiting when patentee "uses the preamble ***only*** to state a purpose or intended use" (emphasis added)). Rather, IV argues that because those same structures are also described in the body of the claim, the preamble's recitation is superfluous. IV's citations to authority, however, are readily distinguishable because in each case the preamble did not provide antecedent basis to the claims. *See e.g. id.* at 1329 ("The rules we have articulated about what preamble language reciting structure is limiting are telling about what is missing here. The vehicle language here does not supply 'antecedent basis' for terms in the body . . . ."); *Schumer v. Lab'y Comput. Sys., Inc.*, 308 F.3d 1304, 1310 (Fed. Cir. 2002) (preamble not limiting where it does not provide antecedent basis and preamble "described features that necessarily exist in any coordinate system").

Faced with this case law, IV alternatively argues that the Court should strip away all context from the preamble and find only the terms in the preamble that provide antecedent basis limiting. This contradicts the claim language and controlling case law. *See TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1323 (Fed. Cir. 2015) (finding non-limiting language stating a purpose or intended use while finding the portion of the preamble providing necessary structure should be limiting). Like in *TomTom*, the "remote device management communication system" here is not for use in any network device, but in a network device in a distributed network with certain required elements.

5

*Id.* Thus, the entire portion of the preamble describing this distributed computer network (pink) should be limiting. Furthermore, the language of the preamble (blue) further defines the "remote device management communication system" and the "communications" disclosed in the preamble provide the antecedent basis to "the communication of device management data" in the body of the claims. That description in the preamble (blue) "recites essential structure" and thus "'give[s] life, meaning, and vitality' to the claim" because it provides important context that the communication of device management data is sent to and from the claimed management applications. *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (citations omitted). Thus, the preamble should be found limiting.

### 2. "out-of-band connection means" ('140 Patent, Claims 1, 6, and 7)

| LGL's Proposed Construction | IV's Proposed Construction |
|---|---|
| Subject to § 112, ¶ 6 | Subject to § 112, ¶ 6 |
| Function: "connecting said one or more network services or remote users with said secure management access controller for management of said network device" | Function: "connecting said one or more network services or remote users with said secure management access controller for management of said network device" |
| Structure:<br><br>Structure disclosed at 3:2-4, 6:14-21, 7:60-62, 8:30-38, 11:16-18, 12:21-13:31, 15:3-25, 15:40-16:34, FIGS. 3-5, 9-13, 18, 23-26, and 30, and equivalents | Structure: a SMACC Network Enabled Management Interface; and/or communication system component(s), such as protocols, modems, and physical interfaces disclosed in the specification; and/or equivalents of both the SMACC Network Enabled management Interface; and/or communication system component(s).<br><br>*See* '140 Patent, 3:2-4, 6:14-21, 7:60-62, 8:30-38, 11:16-18, 12:21-13:31, 15:3-25, 15:40-16:34, FIGS. 3-5, 9-13, 18, 23-26, and 30. |

IV appears to have withdrawn the disputed corresponding structures at 11:60-12:20, 14:55-15:2, and 15:26-39 and identifies three additional citations of corresponding structure disclosed at 8:30-38, 11:16-18 and Figure 30. LGL agrees that these are corresponding structures for the "out-of-band communication means."

6

IV's changed narrative summary of the corresponding structure remains in dispute. While IV states that "communication systems component(s), such as protocols, modems, and physical interfaces" are limited to those "disclosed in the specification" and equivalents thereof, this description on its face improperly suggests that ***all*** "communication systems component(s), such as protocols, modems, and physical interfaces" listed in the specification are within the scope of this claim—not just those in the specific citations comprising the corresponding structure.[4] *See e.g.*, '140 Patent, 3:24-31 (disclosing a clock protocol (Network Time Protocol) that is unrelated to the "out-of-band communication means."). IV's narrative is ambiguous and should be rejected.

LGL also disputes IV's attempt to capture within the claim construction the requirement that "the corresponding structures agreed to by the parties do not imply that a combination of such structures is either required or excluded." Dkt. 41 at 9-10. IV, however, points to nothing in the specification that identifies all such combinations as part of the disclosed, corresponding structure. Under Section 112, ¶ 6 the only combinations within the scope of the claim are those (1) explicitly disclosed in the specification or (2) equivalents of the explicitly disclosed structure in the specification. The parties' agreed-upon structure accounts for any such claimed combinations. No additional requirements or clarification is needed.

### 3. "virtual management interface connection means" ('140 Patent, Claim 1)

| LGL's Proposed Construction | IV's Proposed Construction |
|---|---|
| Subject to § 112, ¶ 6<br><br>Functions:<br><br>(i) "connecting said one or more network services or remote users with said secure management access controller";<br><br>(ii) "provides logical separation of management data from user data" | Subject to § 112, ¶ 6<br><br>Functions:<br><br>(i) "connecting said one or more network services or remote users with said secure management access controller";<br><br>(ii) "provides logical separation of management data from user data"<br><br>(iii) "utilizes user interfaces of said managed network element for connecting said one or more network services or remote users with said secure management access |

---

[4] In general, IV's use of a narrative to summarize the corresponding specification citations is overbroad, oversimplified, and is ultimately unhelpful to understanding the scope of the claims. The Court should reject IV's structural narratives in all of the means-plus-function claims and identify the corresponding structure only by specification citation.

7

| | |
|---|---|
| (iii) "utilizes user interfaces of said managed network element for connecting said one or more network services or remote users with said secure management access controller"<br><br>Structure:<br><br>Structure disclosed at: 3:2-33, 6:22-31, 6:63-7:5, 9:2-7, 11:60-67, 12:5-21, 15:26-39, FIGS. 3-5 | controller."<br><br>Structure:<br><br>a Virtual Management Interface (VMI) coupled to a user interface on the managed device, where the VMI utilizes communication system component(s), such as protocols, modems, and physical interfaces disclosed in the specification; and/or equivalents.<br><br>*See* '140 Patent, 3:2-33, 6:22-31, 6:63-7:5, 8:20-29, 11:60-67, 12:5-21, 12:37-64, 14:55-16:34, FIGS. 3-5, 9-13, 18, and 23-26. |

LGL agrees that 6:22-31, 12:5-21, and 15:26-39, and Figures 3-5 are corresponding structure. Given IV's narrowing of its proposed structure to 11:60-67, LGL also agrees this is corresponding structure. Further, for the same reasons discussed above, LGL disputes IV's inclusion of "communication system component(s)" that are "disclosed to the specification," but not limited to the specific citations comprising the corresponding structure. *Supra* Section II.B.3.

The parties also continue to dispute whether 8:20-29, 12:37-64, 14:55-16:34, and Figures 9-13, 18, and 23-26 disclose corresponding structure because, as IV acknowledges, these discuss "the SMACC, the SMACC Network Enabled Management Interface, and corresponding structure[s] for the out-of-band access"—not the VMI. Dkt. 41 at 13. There is no dispute that these structures are not within the claimed structure for the "virtual management interface connection means." Dkt. 41 at 14. IV's inclusion of this broad "incidental" language is unhelpful and erroneous because it leaves the jury to guess whether the language is unclaimed "incidental" language or corresponding structure. *C.f. Bicon*, 441 F.3d at 951. As IV acknowledges, 8:20-29 discloses "the use of VPN with the VMI," which is already included as corresponding structure in agreed-upon 6:63-7:5. There is thus no reason to also include 8:20-29, which discusses an exemplary embodiment of the entire SMACC and is not tied to the claimed function.

Instead, IV's corresponding structure repeatedly conflates the SMACC Network Enabled Management Interface (i.e., "SMACC interface") with the VMI. IV acknowledges that 12:37-64 describes various embodiments of the SMACC and SMACC interface. Dkt. 41 at 13. IV is simply incorrect that the VMI is also discussed in this section of the specification. As is clear from the

8

specification, the "SMACC interface" refers to a structure *separate* from the VMI and cannot be corresponding structure here. '140 Patent, 11:60-63 (describing two types of interfaces: VMI and SMACC Network Enabled Management Interface); 12:21-22. Similarly, 14:55-16:34 (and corresponding Figures 9-13, 18, and 23-26) includes broad swaths of disclosure regarding access via out-of-band networks via the SMACC interface—not the VMI. *See, e.g.*, '140 Patent, 15:40-54 (discussing SMACC interface being used "if the services are not available over the VMI"). The VMI and the claimed function, are simply not discussed in these sections.

Accordingly, the Court should reject IV's contention that the disclosures in 8:20-29, 12:37-64, 14:55-16:34, and Figures 9-13, 18, and 23-26 are corresponding structure.

### 4. "protection means" ('140 Patent, Claim 11)

| LGL's Proposed Construction | IV's Proposed Construction |
|---|---|
| Subject to § 112, ¶ 6<br>Function:<br>"protecting the management data"<br>Structure:<br>Structure disclosed at<br>3:49-60, 6:22-33, 6:34-7:6, 12:5-36, and FIGS. 4, 5 and 22. | Subject to § 112, ¶ 6<br>Function:<br>"protecting the management data"<br>Structure:<br>A virtual private network (VPN) via a virtual management interface (VMI) and/or an SMACC interface; and/or equivalents.<br>*See* '140 Patent, 3:49-60, 6:22-33, 6:58-7:6, 12:5-36, FIGS. 3-5, 21, and 22. |

LGL agrees to include the disclosure in 6:22-31 and Figure 4. However, on their face, Figures 3 and 21 do not mention or show "the VMI . . . logically separating, and thus protecting, the management data" (Dkt. 41 at 17) and therefore do not provide corresponding structure.

The only remaining dispute relates to IV's "conditional" agreement to include 6:34-57 ***only if*** the combination of all three recited structures is not required. Dkt. 41 at 15. IV does not dispute that 6:34-57 recites relevant structure. Rather, IV attempts to rewrite the disclosure contrary to grammar rules, and based on conclusory, unsupported statements regarding the understanding of a POSITA (even though it did not submit any declaration of a POSITA to inform its position). The specification explicitly states, "a combination of firewall, VPN, **and** authentication and

9

authorization applications." '140 Patent, 6:34-37 (emphasis added). IV alleges that despite the use of "combination" and "and," this phrase should be understood disjunctively such that a firewall alone would be corresponding structure, for example. This vitiates the word "combination" and the use of the conjunctive "and." *See, e.g.*, Ex. 10, Scalia, A. & Garner, B., "Readling Law: The Interpretation of Legal Texts" at 16-23 (2012) (discussing conjunctive/disjunctive cannon). Indeed, the specification explains how each of those features protect different aspects of the management interfaces, and thus all three are necessary. '140 Patent, 6:37-54. The Court should reject IV's conditional acceptance of clearly relevant structure and include 6:34-57 as it is plainly written, requiring "a combination of firewall, VPN, **and** authentication and authorization applications."

5. **"monitoring means for monitoring the status of at least one computer network component" ('140 Patent, Claim 13)**

| LGL's Proposed Construction | IV's Proposed Construction |
|---|---|
| Subject to § 112, ¶ 6 | Subject to § 112, ¶ 6 |
| Function: | Function: |
| "monitoring the status of at least one computer network component" | "monitoring the status of at least one computer network component" |
| Structure: | Structure: |
| Indefinite | the SMACC; and/or the SMACC processor; and/or circuitry and/or software monitoring the status of network components and availability of power thereto; and/or equivalents |
| Alternatively, algorithms disclosed at 7:25-44, 17:64-18:4, 18:20-51, 19:23-31, 21:28-65, and FIGS. 15-16 | *See* '140 Patent, 7:25-44, 17:64-18:4, 18:20-51, 19:23-31, 19:65-20:4, 20:11-21:19, 21:28-65, FIGS. 2, 9, and 15-17. |

IV's primary argument that the SMACC is a "general purpose computer" (i.e., a generic processor in a generic network device) that performs the claimed function is an admission that this term is indefinite under § 112, ¶ 6. Dkt. 41 at 18. The Federal Circuit has "consistently required that [under § 112, ¶ 6] the structure disclosed in the specification be more than simply a general purpose computer or microprocessor." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1352 (Fed. Cir. 2015). Accepting IV's argument renders the term indefinite. *Aristocrat Techs. Austl. Pty*

*Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008) (holding that under § 112, ¶ 6 disclosing only a general purpose computer or microprocessor "amounts to pure functional claiming" and "does not limit the scope of the claim").

As a "back up" argument, IV identifies irrelevant structure at 19:65-20:4, 20:11-21:19, and Figures 2, 9, and 17.[5] These disclosures discuss reporting, not monitoring. IV misrepresents that 19:65-20:4 discusses reporting at certain "times," when a plain reading of the specification is that different networks may be used in reporting based on connectivity. Confusingly, IV's argument that the algorithm disclosed in 20:11-21:19 involves "monitoring" relies on an entirely different part of the specification. Dkt. 41 at 30 (citing '140 Patent, 11:50-51). IV identifies no algorithm in 20:11-21:19 that involves monitoring. The Court should find this term indefinite under IV's interpretation, or alternatively, reject IV's proposed corresponding structure at 19:65-20:4, 20:11-21:19, and Figures 2, 9, and 17.

6. **"monitoring means for monitoring the status of the network power supply" ('140 Patent, Claim 14)**

| LGL's Proposed Construction | IV's Proposed Construction |
|---|---|
| Subject to § 112, ¶ 6<br>Function:<br>"monitoring the status of the network power supply"<br>Structure:<br>Indefinite | Subject to § 112, ¶ 6<br>Function: "monitoring the status of the network power supply."<br>Structure: The SMACC; and/or the SMACC processor; and/or equivalents.<br>*See* '140 Patent, 7:25-44, 11:25-36, 17:64-18:4, 18:20-51, 19:23-31, 19:65-20:4, 20:11-21:19, 21:28-65, FIGS. 2, 9, and 15-17. |

As with the term above, IV concedes this term is indefinite because it contends that the SMACC and/or SMACC processor is "a generic processor of a network device." Dkt. 41 at 21; *see Williamson*, 792 F.3d at 1352; *Aristocrat Techs*, 521 F.3d at 1333. This should end the inquiry.

Further, IV misrepresents LGL's argument regarding IV's identification of the SMACC as corresponding structure for numerous claim terms. Dkt. 41 at 22. As described in LGL's opening

---

[5] LGL agrees to include the algorithm at 19:23-31.

11

brief, the SMACC is a special purpose computer that is an exemplary embodiment of the entire invention—it necessarily performs all the claimed functions. But the specification fails to disclose algorithms describing how the SMACC performs certain claimed functions, including for "monitoring the status of the network power supply."

In the alternative, IV purports to identify two alleged algorithms for the claimed function.[6] IV argues a POSITA would understand that the SMACC "monitors power outage of an external power supply by receiving and processing a 'notification' from the UPS." Dkt. 41 at 21-22. IV's arguments, however, are based on conclusory and unsupported attorney argument regarding what a POSITA would understand. The only expert addressing this claim limitation is LGL's expert, Dr. Lee, who concludes that "a POSITA reading the specification of the '140 Patent would not understand the specification to identify an algorithm, formula, flow chart, or process for monitoring the status of the network power supply." Dkt. 33-9 (Lee Decl.) ¶ 55. Dr. Lee notes that while 18:33-38 describes that the SMACC processor can "monitor the supply of external power to the power supply" (i.e., perform the claimed function), it does not disclose any "process or algorithm that the SMACC processor would use to detect a power loss from the external power source nor how the SMACC processor monitors the supply of external power to the power supply." *Id.* ¶ 57. IV's attorney speculation as to how a POSITA would interpret the specification should be given no weight. Therefore, the Court should find this term indefinite.

### 7. "reporting means" ('140 Patent, Claim 14)

| LGL's Proposed Construction | IV's Proposed Construction |
|---|---|
| Subject to § 112, ¶ 6<br>Function:<br>"reporting the status of the network power supply"<br>Structure: | Subject to § 112, ¶ 6<br>Function: "reporting the status of the network power supply."<br>Structure:<br>The SMACC; and/or the VMI; and/or the SMACC interface; and/or equivalents. |

---

[6] IV's entire argument is limited to the structure disclosed at 11:25-36, 18:20-51, and Figures 2 and 17. IV provides no justification for including the remaining disclosures it alleges are corresponding algorithms.

| | |
|---|---|
| Indefinite | *See* '140 Patent, 6:22-33, 7:39-44, 11:25-36, 11:60-67, 12:5-20, 18:20-51, 20:11-21:12, FIGS. 2, 3, 9, & 15-17. |

IV again concede this term is indefinite because it contends that the SMACC is "a generic processor of a network device." Dkt. 41 at 23; *see Williamson*, 792 F.3d at 1352; *Aristocrat Techs*, 521 F.3d at 1333. This should end the inquiry.

IV also again misrepresents LGL arguments regarding the inclusion of the VMI and the SMACC interface as corresponding structure. None of the disclosures relating to the VMI discuss reporting the status of the network power supply. Dkt. 33 at 20. Nor has IV identified any portion of the specification where the VMI is used to report a "status of the network power supply." Further, as explained by Dr. Lee, the VMI or SMACC interface ***alone*** cannot be the "reporting means" because such interfaces "do[] not contain a processor or software for non-traffic related tasks such as reporting." Dkt. 33-9 (Lee Decl.), ¶ 62. IV's attempt to counter Dr. Lee's expert opinion with conclusory and unsupported attorney argument regarding purported knowledge of a POSITA should be disregarded.

IV also purports to identify algorithms for reporting the status of the network power supply. However, IV only identifies disclosures discussing reporting generically—not reporting ***the status of the network power supply***. Dkt. 41 at 24 (citing '140 Patent, 8:1-12, 19:65-20:1 (discussing reporting network status). The purported "algorithms" identified by IV are that the SMACC (1) "report[s] the power loss over the SMACC interface" (*id.*, 11:32-36); (2) "notif[ies] the management center of the loss of power (*id.*, 18:38-46); or (3) sends an alert of a power outage (*id.*, 20:14-19). These disclosures merely rephrase the claimed function; they do not explain *how* the SMACC or SMACC processor performs that function, as Dr. Lee confirmed. Dkt. 33-9 (Lee Decl.) ¶ 67; *Williamson*, 792 F.3d at 1354. Thus, the Court should find this term indefinite.

> **8. "means for monitoring connection attempts made through the management access controller" ('140 Patent, Claim 16)**

| LGL's Proposed Construction | IV's Proposed Construction |
|---|---|
| Subject to § 112, ¶ 6 | Subject to § 112, ¶ 6 |

| | |
|---|---|
| Function:<br>"monitoring connection attempts made through the management access controller"<br>Structure:<br>Algorithm disclosed at 22:4-25 and Figure 32 | Function:<br>"monitoring connection attempts made through the management access controller"<br>Structure:<br>Structure: the SMACC; and/or equivalents.<br>*See* '140 Patent, 6:34-37, 6:44-57, 7:7-24, 8:13-19, 15:25-39, 15:47-56, 19:44-64, 22:4-25, FIG. 32. |

In its response, IV identifies new structures and algorithms allegedly corresponding to the claimed function (6:34-37, 6:44-57, 7:7-24, 7-24, 15:25-39, 15:47-56, 19:44-64). Yet IV's constantly shifting, litigation-inspired arguments are unsupported and untethered to the claimed function. IV identifies numerous disclosures of structures that prohibit unauthorized access, protect interfaces from attack, block unauthorized protocols, and control access. Dkt. 41 at 25-26. None of these disclosures actually describe performing the claimed function of ***monitoring connection attempts through the management access controller***. IV again speculates as to how a POSITA would interpret specification. For example, IV alleges that a "POSITA would have understood that a firewall and a VPN both . . . monitor connection attempts and reject unauthorized connection attempts" relying on 6:41-44 even though the specification never describes monitoring connection attempts ***through the management access controller as claimed***.[7] Instead, 6:41-44 merely states that the firewall protects the SMACC from unauthorized access and protocols. There is no disclosure of monitoring. *Compare* '140 Patent, 6:44-47 (discussing configurations to allow only certain protocols) *with* Dkt. 41 at 26 (asserting without support or citation that SMACC can "monitor connection attempts by monitoring the protocols"). The Court should reject IV's belated attempt to include broad disclosures of access controls for connecting to the management interfaces untethered to the claimed function and adopt LGL's proposed construction.

---

[7] Similarly, IV alleges that VPNs access authentication/authorization servers, which includes "monitoring connection attempts," citing 15:47-56, even though this passage again does not disclose monitoring of connection attempts through the management access controller. 15:47-56 is silent regarding the function of the authentication/authorization server.

14

9. **"said . . . remote users" '140 Patent, Claim 1**

| LGL's Proposed Construction | IV's Proposed Construction |
|---|---|
| Indefinite | Plain and ordinary meaning |

IV speculates that a POSITA would "readily understand" that "remote users" refers to a computer—not a user. But that is not how the claims were drafted. Rather, as Dr. Lee explains, a POSITA would not use the word "user" to refer to a computer or other device but would use the word "agent" or "client" or use "user" as a modifier to identify a device, which is consistent with the specification. Dkt. 33-9 (Lee Decl.) ¶¶ 69-70. IV's other argument that "said" only modifies the immediately following word such that "said one or more network services or remote users" conflicts with the cannons of grammar which apply to claim construction. *See, e.g.*, Ex. 10, Scalia et al., at 24-26 (discussing that when there is a parallel construction that involves all nouns in a series, a modifier applies to the entire series); *see also SIMO Holdings Inc. v. H.K. uCloudlink Network Tech. Ltd.*, 983 F.3d 1367, 1376-77 (Fed. Cir. 2021) ("[B]ecause the list uses 'and' rather than 'or,' the phrase is properly understood as if [the modifier] appears before each item."). Nothing in the claims suggests this cannon of grammar does not apply here. Therefore, the Court should find that "said . . . remote users" lacks antecedent basis and claim 1 (and all claims that depend therefrom) are invalid as indefinite.

C.    **'835 Patent and '439 Patent**

As IV briefed these terms in the *Zebra* case and incorporated those arguments in this case, for the reasons set forth in Zebra's Reply Claim Construction Brief (6:23-cv-00292 (WDTX), Dkt. 47), the Court should adopt LGL's proposed constructions for each disputed claim term.

III.   **CONCLUSION**

For the foregoing reasons, as well as those set forth in LGL's Opening Claim Construction Brief (Dkt. 33), LGL respectfully requests that the Court adopt LGL's proposed construction for each disputed claim term.

Dated: March 12, 2024            Respectfully submitted,

/s/ *Steve R. Borgman*
Steve R. Borgman
Texas State Bar No. 02670300
KILPATRICK TOWNSEND &
STOCKTON LLP
700 Louisiana Street Suite 4300
Houston, TX 77002
Telephone: 281.809.4081
Fax: 281.990.6826
sborgman@kilpatricktownsend.com

**ATTORNEY FOR DEFENDANT
LENOVO GROUP LIMITED**

## **CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on March 12, 2024, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Steve R. Borgman*
Steve R. Borgman
