**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC,<br><br>Plaintiffs,<br><br>v.<br><br>LENOVO GROUP LIMITED,<br><br>Defendant. | Civil Action No. 6:23-cv-00307-ADA |

**PLAINTIFFS' SUR-REPLY CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

I. Disputed Terms ........................................................................................................................ 1

   A. U.S. Patent No. 8,474,016 .............................................................................................. 1

      1. "processor configured to facilitate operation of the network device" (claim 1) ........... 1

      2. "the apparatus of claim 1, wherein the apparatus is a component within the network device" (claim 9) ............................................................................................................... 2

   B. U.S. Patent No. 7,325,140 .............................................................................................. 2

      1. "remote device management communication system for securely controlling access to management applications and communications to and from said management applications on network devices in a distributed computer network that includes one or more network services, one or more secure management access controllers, and one or more managed network devices, the remote device management system comprising:" (claim 1) ............. 2

      2. "out-of-band connection means:" (claims 1, 6, and 7) .................................................. 5

      3. "virtual management interface connection means" (claim 1) ....................................... 6

      4. "protection means" (claim 11) ....................................................................................... 7

      5. "monitoring means for monitoring the status of at least one computer network component" (claim 13) ........................................................................................................ 9

      6. "monitoring means for monitoring the status of the network power supply" (claim 14) 10

      7. "reporting means" (claim 14) ...................................................................................... 11

      8. "means for monitoring connection attempts made through the management access controller" (claim 16) ........................................................................................................ 13

      9. "said . . . remote users'" (claim 1) ............................................................................... 14

   C. '835 Patent and '439 Patent ......................................................................................... 15

II. Conclusion ........................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**

Advanced Software Design Corp. v. Fiserv, Inc.
  641 F. 3d 1368 (Fed. Cir. 2011) .................................................................................... 1, 2

*Dyfan, LLC v. Target Corporation*,
  Case No. 6:19-cv-00179-ADA, Dkt. 57 ........................................................................... 14

Genuine Enabling Technology LLC, v. Nintendo Co. Ltd.,
  29 F.4th 1365 (Fed. Cir. 2022) ......................................................................................... 14

*HTC CORP v. IPCom GmbH & Co., KG*,
  667 F.3d 1270 (Fed Cir. 2012) ........................................................................................... 1

Micro Chemical v. Great Plains Chemical Co.,
  194 F. 3d 1250 (Fed. Cir. 1999) ......................................................................................... 8

Neapco Drivelines LLC v. American Axel & Manufacturing, Inc.,
  2021 WL 913935 (Fed. Cir. 2021) ..................................................................................... 5

Panasonic Corporation v. Magna International, Inc.,
  2022 WL 625089 (Fed. Cir. 2022) ..................................................................................... 5

Shoes by Firebug LLC v. Stride Rite Children's Grp., LLC,
  962 F.3d 1362 (Fed. Cir. 2020) ...................................................................................... 3, 4

SIMO Holdings Inc. v. H.K. uCloudlink Network Tech. Ltd.,
  983 F.3d 1367 (Fed. Cir. 2021) ........................................................................................ 15

*TQP Dev., LLC v. Wells Fargo & Co.*,
  2013 WL 6247363 (E.D. Tex., Dec. 2, 2013) .................................................................. 14

*Williamson v. Citrix Online, LLC*,
  792 F. 3d 1339 (Fed. Cir. 2015) ......................................................................... 10, 11, 12

I.   **DISPUTED TERMS**

   A.   **U.S. Patent No. 8,474,016**

   1.   *"processor configured to facilitate operation of the network device"* (claim 1)

| LGL's Proposed Construction | IV's Proposed Construction |
|---|---|
| Subject to §112, ¶6<br>**Function**: "facilitating the operation of the network device"<br>**Structure**: Indefinite | Plain and ordinary meaning |

In continuing to argue that this claim term is indefinite, Lenovo incorrectly states that IV's argument results in "reading out more than half of the claim language." Reply Br. at 1-2. As IV explained in its Responsive Brief, however, the network device and its processor are limiting in that they describe the device to be managed but are not an actively claimed parts of the apparatus. Resp. Br. at 3-4. In other words, the disputed term only limits the environment in which the claimed apparatus operates. *Advanced Software Design Corp. v. Fiserv, Inc.* 641 F. 3d 1368, 1375 (Fed. Cir. 2011) (finding a "distin[ction] between those limitations that describe the environment … and those that must be performed by an accused infringer"); *HTC CORP v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1274-76 (Fed Cir. 2012) ("[t]he specification confirms that the six functions define the network environment; they are not functions performed by the mobile station")[1]; Resp. Br. at 4-5. The claim language and specification disclosure clearly evidence this.

For example, the claimed apparatus provides *for remotely managing* or for the *secure management of* a network device. '016 Patent, Abstract; *Id*. at 1:27-31. The hardware and software of the claimed apparatus can be separate from the network device or can be embedded therein. *Id*. at 5:52-59, *see id*. at 4:11-15. Moreover, the remote management functionality—

---

[1] In *HTC*, more than half of the functions recited in the body of the claim were found to be defining the environment in which the claim operated.

1

which is the entire purpose of the claimed apparatus—is consistently described as being necessary because a "vast majority of the *networking elements* are not in the same geographic location or easily accessible by the skilled technicians or network administrators." *Id*. at 1:35-42.  Thus, the network device and the processor that controls it are not claimed as part of "an apparatus, comprising," but rather, part of the environment in which the claimed apparatus operates, and as such, they need only be present in the environment and described sufficiently for a POSITA to understand the same. *See Advanced Software Design Corp.*, at 1375. *See, e.g.*, '016 Patent at 18:42-51, 20:46-51, Fig. 1 (illustrating CPU (processor of network device) as traditional CPU structure with CPU Bus, Boot ROM, Flash, NVRAM and RAM attached thereto).

>    2.   "the apparatus of claim 1, wherein the apparatus is a component within the network device" (claim 9)

| LGL's Proposed Construction | IV's Proposed Construction |
|---|---|
| Indefinite | Plain and ordinary meaning |

Lenovo's argument rests on its mistaken interpretation of claim 1 that the network device and its components are elements of the claimed apparatus.  As described above, this is not true, and hence, claims 1 and 9 are consistent.  *See supra*, § I.A.1; Resp. Br. at 5-6.  Accordingly, the Court should not find claim 9 indefinite, and should adopt IV's proposed construction.

>    B.   U.S. Patent No. 7,325,140
>
>    1.   "remote device management communication system for securely controlling access to management applications and communications to and from said management applications on network devices in a distributed computer network that includes one or more network services, one or more secure management access controllers, and one or more managed network devices, the remote device management system comprising:" (claim 1)

| LGL's Proposed Construction | IV's Proposed Construction |
|---|---|
| Preamble is limiting | Preamble is not limiting |

2

Lenovo attempts to swap horses mid-race with its reply arguments as to why the preamble of claim 1 is limiting, and in doing so creates a theory that is an amalgamation of multiple legal principles misapplied and improperly combined, and therefore, cannot overcome the presumption that a preamble is not a claim limitation. More specifically, in its Opening Brief, Lenovo argued that the preamble is limiting because "[i]t is the antecedent [basis] for multiple vital claim limitations." Op.Br. at 10. After IV's response to these arguments, Lenovo now claims that the two terms taking antecedent basis from the preamble[2] are "essential structure" when recited in the body of the claim, and that that alone is sufficient to find the preamble limiting. Reply Br.at 5-6. Lenovo additionally argues that the remainder of the preamble is limiting because it "recites essential structure and thus gives life, meaning, and vitality to the claim" in that it "provides important context" to the claim body. *Id*. Both arguments are incorrect.

The fact that a term first introduced in the preamble is later recited in the claim body in a structural manner does not alone render the preamble limiting. Lenovo twists the holding in *Shoes by Firebug LLC v. Stride Rite Children's Grp., LLC*,[3] to support this novel theory, however, the analysis required to determine whether a preamble is limiting is heavily fact specific, and the facts in *Shoes by Firebug* are inapplicable here. In *Shoes by Firebug* the disputed preamble read "an internally illuminated *textile* footwear comprises." *Id.* at 1365. In the claim body the term "the footwear" was used a single time in the context of the element "the illumination system being housed within *the footwear*." *Id*. The Court determined <u>not that</u> "the

---

[2] As IV pointed out in its Responsive Brief, the term "said secure management access controller" as appearing in the second claim element takes its antecedent basis from the term "at least one secure management access controller" appearing in the first element of the body of the claim, not from the preamble as Lenovo originally argued. Resp. Br. at 6-7.
[3] 962 F.3d 1362 (Fed. Cir. 2020).

3

antecedent basis of essential structure alone is sufficient to find a preamble limiting" as Lenovo argues (Reply Br. at 4), but rather that because the preamble was used to add the structural limitation of "*textile*" to the "footwear" term taking antecedent basis from it, the preamble was "essential to understanding the structural limitations of the illumination system." *Id*. at 1368. That is the exact opposite of the facts in this case.

For example, unlike the term "footwear" in *Shoes by Firebug*, the two terms in claim 1 of the '140 patent that take antecedent basis from the preamble—"network services" and "managed network devices"—are not described at all in the preamble. '140 Patent at 22:32-39 ("a remote device management communication system . . . that includes one or more network services, one or more secure management access controllers and one or more managed network devices."). In other words, the iterations of these two terms in the preamble provides no structure at all, never mind structure essential to understanding the limitations of the claimed system. Indeed, it is only the description contained within the body of the claim that defines the structural limitations essential to understanding these terms. *See* '140 Patent at 22:40-47; Resp. Br. at 7-8. This squarely distinguishes *Shoes by Firebug* and illustrates the fatal flaw in Lenovo's argument.

For the first time in its Reply Brief, Lenovo also argues that the portion of the preamble reciting "for securely controlling access to management applications and communications to and from said management applications" is limiting because it "provides important context that the communication of the device management data is sent to and from the claimed management application." Reply Br. at 6. Not so. First, this portion of the preamble is a non-limiting intended use, *i.e.*, the system is for controlling access to management features of managed network devices. That is classic intended use language that does not rise to the level of "essential structure", nor does it breathe life, meaning and vitality into the claim. *See Neapco*

4

*Drivelines LLC v. American Axel & Manufacturing, Inc.,* 2021 WL 913935, *2 (Fed. Cir. 2021). Second, the body itself provides the specific structural requirements of the invention such that no context from the preamble is necessary. *See* '140 Patent at 40:57; Resp. Br. at 7-8. This specific disclosure subsumes any alleged context that the preamble may have otherwise provided, defines a structurally complete invention, and therefore, is not a legitimate basis for finding the preamble limiting. *See Panasonic Corporation v. Magna International, Inc.,* 2022 WL 625089, *18 (Fed. Cir. 2022).

 2. *"out-of-band connection means:" (claims 1, 6, and 7)*

| LGL's Proposed Construction | IV's Proposed Construction |
|---|---|
| Subject to 112, ¶6<br>**Function**: "connecting said one or more network services or remote users with said secure management access controller for management of said network device"<br>**Structure**:<br>Structure disclosed at 3:2-4, 6:14-21, 7:60-62, 12:21-13:31, 15:3-25, 15:40-16:34, FIGS. 3-5, 9-13, 18, and 23-26 and equivalents | Subject to 112, ¶6<br>**Function**: "connecting said one or more network services or remote users with said secure management access controller for management of said network device"<br>**Structure**: a SMACC Network Enabled Management Interface; and/or communication protocols, modems, and physical interfaces (collectively communication system components) disclosed in the specification; and/or equivalents of both the SMACC Network Enabled Management Interface; and/or communication system component(s).<br>*See* '140 Patent, 3:2-4, 6:14-21, 7:60-62, 8:30-38, 11:16-18, 12:21-13:31, 15:3-25, 15:40-16:34, FIGS. 3-5, 9-13, 18, 23-26, 30. |

Lenovo confirms that the parties agree on the corresponding structures for this term. Reply Br. at 6-7.  To address Lenovo's concern that IV's narrative description of the corresponding structure is overbroad, IV has modified the narrative above.  This clarifies that the corresponding structures are limited to those disclosed in the specification (plus equivalents).

 Lenovo disputes IV's statement in its Response Brief that "the corresponding structures agreed to by the parties do not imply that a combination of such structures is either required or excluded."  *Id.*; Resp. Br. at 11.  IV agrees that regarding combinations of structures, only those combinations that are explicitly disclosed and/or their equivalents are within the scope of the

5

claim. But, the structures that IV identified demonstrate that a communication protocol, a modem, or a physical interface, by itself, can also facilitate an out-of-band connection,[4] and thus, each is a corresponding structure individually, as well. *See* Resp. Br. at 11-12. Accordingly, the Court should adopt IV's construction of this claim term.

    3.    *"virtual management interface connection means"* (claim 1)

| LGL's Proposed Construction | IV's Proposed Construction |
|---|---|
| Subject to §112, ¶6<br>**Functions**:<br>(i) "connecting said one or more network services or remote users with said secure management access controller";<br>(ii) "provides logical separation of management data from user data"<br>(iii) "utilizes user interfaces of said managed network element for connecting said one or more network services or remote users with said secure management access controller"<br>**Structure**:<br>Structure disclosed at: 3:2-33, 6:63-7:5, 9:2-7 | Subject to §112, ¶6<br>**Functions**:<br>(i) "connecting said one or more network services or remote users with said secure management access controller";<br>(ii) "provides logical separation of management data from user data"<br>(iii) "utilizes user interfaces of said managed network element for connecting said one or more network services or remote users with said secure management access controller"<br>**Structure**:<br>a Virtual Management Interface (VMI) coupled to a user interface on the managed device, where the VMI utilizes communication protocols, modems, and physical interfaces (collectively communication system components) disclosed in the specification; and/or equivalents.<br><br>*See* '140 Patent, 3:2-33, 6:22-31, 6:63-7:5, 8:20-29, 9:2-7, 11:60-67, 12:5-21, 12:37-64, 14:55-16:34, FIGS. 3-5, 9-13, 18, and 23-26. |

Lenovo argues that IV's narrative summarizing the corresponding structure encompasses communication system components that are not limited to the corresponding structures. Reply Br.at 8. IV has addressed Lenovo's concern by modifying the narrative: "the VMI utilizes communication protocols, modems, and physical interfaces (collectively communication system components) disclosed in the specification." *See supra*, § I.B.2.

---

[4] A protocol, interface, or modem may need one or more of the other two for end-to-end communication. But, a disclosed protocol / interface / modem need not be used in combination with only the disclosed embodiments of the other type of component. Any generally known embodiment of the other types would suffice.

6

Regarding the structures at 8:20-29, 12:37-64, 14:55-16:34, and Figures 9-13, 18, and 23-26 that IV identified, Lenovo alleges that IV "conflates the SMACC Network Enabled Management Interface (i.e., "SMACC interface") with the VMI." Reply Br. at 8-9. Lenovo is incorrect. Specifically, the structure at 8:20-29 discloses that a "plurality of possible paths may exist from the management center to the SMACC, both *utilizing the VMI* on the SMACC and SMACC interfaces on the SMACC. The remote administrator will be able to utilize *any of these interfaces* to connect from the management center to the SMACC." '140 Patent, 8:24-29.

The structure at 12:37-64 discloses various "physical interfaces" that can be used for or may form the "user data interfaces" through which a VMI connection may be made. *See id.*, 6:22-31, FIG. 3. The structure at 14:55-16:34 generally describes access to network services and various communication protocols used to this end. The '140 Patent states: "A SMACC enabled device will be able to be configured to securely access these network services over the user interfaces *utilizing the VMI*." *Id.*, 14:61-64. Thus, the additional structures that IV identified do disclose the use of the VMI. As such, the Court should adopt IV's construction of this term.

4.      "protection means" (claim 11)

| LGL's Proposed Construction | IV's Proposed Construction |
|---|---|
| Subject to §112, ¶6<br>**Function**: "protecting the management data"<br>**Structure**:<br>Structure disclosed at<br>3:49-60, 6:22-33, 6:34-7:6, 12:5-36, and FIGS. 5 and 22 | Subject to §112, ¶6<br>**Function**: "protecting the management data"<br>**Structure**: A virtual private network (VPN) via a virtual management interface (VMI) and/or an SMACC interface; and/or equivalents.<br><br>*See* '140 patent, 3:49-60, 6:22-33, 6:58-7:6, 12:5-36, FIGS. 3-5, 21, and 22. |

Lenovo's Reply Brief confirms that it intends to take the position that the corresponding structure for the disputed term is limited to the collective combination of a firewall, VPN, and authentication and authorization applications, which is contrary to the specification and black letter law. *See Micro Chemical v. Great Plains Chemical Co.*, 194 F. 3d 1250, 1259-60 (Fed. Cir.

7

1999) (holding §112, ¶6 reads the claim element to include all disclosed embodiments). Lenovo's basis for its position is that at 6:34-37 the specification discloses that protection of the management interface from attack is "accomplished through *a* combination of firewall, VPN, and authorization and authentication applications." Reply Br. at 9-10. But neither that language, nor the entirety of the specification justifies Lenovo's assertions.

First, the quoted language does not state or imply that a combination of all three is required, as shown by the use of the word "a" and not "the." The phrase "a combination," as opposed to "the combination," indicates the opposite of what Lenovo argues, *i.e.*, that all three structures are <u>not</u> required. In fact, use of each of the three structures independently is disclosed in the same portions of the specification cited by Lenovo as allegedly showing that all three structures collectively are required. *See e.g.*, '140 Patent at 6:58-7:5 (disclosing exemplary embodiment where VPN tunnels running over the VMI protect management traffic via logical separation); 6:42-44 (disclosing exemplary embodiment where a firewall protects the SMACC chipset from access by unauthorized parties); 6:48-52 (disclosing exemplary embodiment where authentication and authorization protocols locally or remotely restrict access through VMI).

Second, Lenovo's objection to Figures 3 and 21 because they "do not mention or show the VMI . . . logically separating, and thus protecting, the management data" is equally unfounded. Reply Br. at 9. The specification discloses Figure 3 as illustrating the SMACC having two types of interfaces, one being the VMI, which "logically separates management traffic from user data traffic." '140 Patent at FIG 3; 11:60-67. Figure 21 is identical to Figure 3 with the addition of a proxy interface that does not change the illustration of the VMI and its logically separating functionality noted above.

8

Thus, the '140 patent discloses various embodiments of corresponding structures that perform the function of protecting the management data that would be read of out the claim with Lenovo's proposed construction. Accordingly, the Court should adopt IV's proposed construction, including that the structure is not limited to the narrow combination Lenovo argues.

5. *"monitoring means for monitoring the status of at least one computer network component"* (claim 13)

| LGL's Proposed Construction | IV's Proposed Construction |
| --- | --- |
| Subject to §112, ¶6 **Function**: "monitoring the status of at least one computer network component" **Structure**: Indefinite Alternatively, algorithms disclosed at 7:25-44, 17:64-18:4, 18:20-51, 21:28-65, and FIGS. 15-16 | Subject to §112, ¶6 **Function**: "monitoring the status of at least one computer network component" **Structure**: the SMACC; and/or the SMACC processor; and/or circuitry and/or software disclosed in the specification as monitoring the status of network components and availability of power thereto; and/or equivalents of the SMACC; and/or the SMACC processor; and/or the above-identified circuitry and/or software. *See* '140 patent, 7:25-44, 17:64-18:4, 18:20-51, 19:23-31, 19:65-20:4, 20:11-21:19, 21:28-65, FIGS. 2, 9, and 15-17. |

For the first time in its Reply Brief, Lenovo argues this term is indefinite. *See* Reply Br. at 10-11. To support this new argument, Lenovo incorrectly states: "IV's primary argument that the SMACC is a 'general purpose computer' ... is an admission that this term is indefinite." *Id.* at 10. That is not IV's argument and also misapplies the applicable law. In its Responsive Brief, IV explained that because the claimed function "can be implemented by a generic processor," an algorithm performing that function does not need to be disclosed. Resp. Br. at 18 (citing '140 Patent, 5:52-59 (disclosing that in the "preferred exemplary embodiment, the *SMACC functions are implemented on a separate processor*" but that these features *can be "integrated with … the main processor* of a device")). In contrast, in *Williamson*, the Federal Circuit found that the patent at issue's claimed function "*cannot be implemented* in a general purpose computer, but instead *must be implemented* in a special purpose computer." *Williamson v. Citrix Online, LLC*,

792 F.3d 1339, 1352 (Fed. Cir. 2015). In addition, as set forth in IV's Responsive Brief, the patent does disclose algorithms for performing the claimed functions. Resp. Br. at 18-19 (discussing use of traps and syslog messages). Accordingly, *Williamson* does not apply to this claim term.

Thereafter, Lenovo describes the additional structures that IV identified as "irrelevant." Reply Br. at 11. But the structure at 19:65-20:4 discloses "using a protocol such as SNMP." Since 1990, the SNMP protocol has been known to perform *monitoring* and control of networks. Ex. A at 1, 5, 7, 9; *see* Resp. Br. at 19 (describing that setting traps is a monitoring function). And the structure at 20:11-21:19 and FIGS. 2 and 17 generally describes power-outage / restoration reporting. *See* Resp. Br. at 19-20. In particular, this structure describes "designat[ing] a user interface as a UPS *monitoring* interface. '140 Patent, 20:54-55, FIGS. 9 and 17. As such, these additional citations identify certain corresponding structures which Lenovo's proposal ignores. Because *Williamson* does not apply to this claim term and because the additional structures that IV identified are proper corresponding structures, the Court should adopt IV's construction of this claim term.

6. *"monitoring means for monitoring the status of the network power supply" (claim 14)*

| LGL's Proposed Construction | IV's Proposed Construction |
|---|---|
| Subject to §112, ¶6 **Function**: "monitoring the status of the network power supply" **Structure**: Indefinite | Subject to §112, ¶6 **Function**: "monitoring the status of the network power supply" **Structure**: The SMACC; the SMACC processor; voltage detection circuitry; and/or equivalents. *See* '140 patent, 7:25-44, 11:25-36, 17:64-18:4, 18:20-51, 19:23-31, 19:65-20:4, 20:11-21:19, 21:28-65, FIGS. 2, 9, and 15-17. |

Here again, Lenovo wrongly states that IV "contends that the SMACC and/or SMACC processor is 'a generic processor.'" Reply Br. at 11. IV did not. Rather, IV stated that "the

10

claimed *function*[] can be implemented by a generic processor," which is the opposite of what *Williamson* required. *See supra*, § I.B.5; Resp. Br. at 20-21. Accordingly, *Williamson* does not apply to this claim term. Resp. Br. at 20-21.

Lenovo also quotes Dr. Lee's opinion that the '140 patent "does not disclose any process or algorithm that the SMACC processor would use to detect a power loss from the external power source," and characterizes IV's argument as "attorney speculation." Reply Br. at 12. This is flawed because the '140 patent explicitly states that the management of a UPS by the SMACC includes "*notification by the UPS* to the SMACC on the loss of external power. If the *SMACC detects a power loss* from the external power source, it will notify the management center of the loss of power." Resp. Br. at 21; '140 Patent, 18:38-46. Thus, there is no attorney speculation; the '140 patent itself discloses that the SMACC can detect power loss based on a notification from the UPS. Therefore, the Court should not find this claim term indefinite, and should adopt IV's identification of the corresponding structures.

### 7. "reporting means" (claim 14)

| LGL's Proposed Construction | IV's Proposed Construction |
|---|---|
| Subject to §112, ¶6<br>**Function**: "reporting the status of the network power supply"<br>**Structure**:<br>Indefinite | Subject to §112, ¶6<br>**Function**: "reporting the status of the network power supply"<br>**Structure**: The SMACC; and/or the VMI; and/or the SMACC interface; and/or equivalents.<br><br>*See* '140 patent, 6:22-33, 7:39-44, 11:25-36, 11:60-67, 12:5-20, 18:20-51, 20:11-21:12, FIGS. 2, 3, 9, and 15-17. |

Yet again, Lenovo bases its indefiniteness argument on the incorrect premise that IV "contends that the SMACC and/or SMACC processor is 'a generic processor.'" Reply Br. at 13. IV never said this. Rather, IV stated that "the claimed *function*[] can be implemented by a generic processor," which is the opposite of what *Williamson* required. *See supra*, § I.B.5; Resp. Br. at 23-24.

11

Additionally, Lenovo mischaracterizes IV's arguments in its Responsive Brief as "attorney argument," and alleges that the cited disclosures "do not explain *how* the SMACC or SMACC processor performs that function." Reply Br. at 13. First, the '140 patent discloses using the SMACC interface and the VMI to report loss and/or restoration of external power, *i.e.*, "status of the network power supply." '140 Patent, 20:21-23 ("one of the events that it might make sense to *report over SMACC interface* would be the *loss of power* at the site"), 21:7-12 (If the VMI is able to access the Management Center … the SMACC will send the notification of power restoration … via the VMI" and otherwise, "the SMACC will establish a connection over a SMACC Interface to report the power restoration").

As to *how* this reporting is done, the '140 patent discloses several communication protocols that can be used between the SMACC and management center. Specifically, the "SMACC may have information … to send to the management center concerning … the operation of the managed device" (*Id*. at 8:1-4), and "[t]his information can be sent to the management center utilizing *protocols* such as SNMP traps, or remote syslog records as well as other possible proprietary or stand[ard]s based protocols." *Id*. at 8:4-9; Resp. Br. at 24. And that the "SMACC will utilize the first available management interface," *i.e.*, the VMI or the SMACC interface, for this purpose. *Id*. Commonsense dictates that the loss of external power is information concerning the operation of the managed device.

Accordingly, the structures IV identified do disclose *how* the SMACC uses its interfaces to report network power supply status, because these structures disclose reporting such status using well-known protocols. Therefore, the Court should not find this claim term indefinite, and should adopt IV's identification of the corresponding structures.

8. *"means for monitoring connection attempts made through the management access controller" (claim 16)*

| LGL's Proposed Construction | IV's Proposed Construction |
|---|---|
| Subject to §112, ¶6<br>**Function**: "monitoring connection attempts made through the management access controller"<br>**Structure**:<br>Algorithm disclosed at 22:4-25 and Figure 32. | Subject to §112, ¶6<br>**Function**: "monitoring connection attempts made through the management access controller"<br>**Structure**: the SMACC; and/or equivalents.<br><br>*See* '140 patent, 6:34-37, 6:44-57, 7:7-24, 8:13-19, 15:25-39, 15:47-56, 19:44-64, 22:4-25, FIG. 32. |

Lenovo argues that even though the structures IV identified "prohibit unauthorized access, protect interfaces from attack, block unauthorized protocols, and control access," they do not perform the claimed function. Reply Br. at 13-14. Lenovo errs. First, IV identified structures that describe using a firewall or a VPN to protect the SMACC, *i.e.*, the claimed "management access controller." Resp. Br. at 25-26. It was well-known long before the priority date of the '140 patent that firewalls and VPNs monitor connection attempts. *See, e.g.*, Ex. B ("firewalls can use a passive filtering" which "usually comprises monitoring traffic"); Ex. C1 (VPN "capture[s]," i.e., monitors and records, "connection logs" which include "attempts to connect"); Ex. C2 at 3-17 (VPN log includes "firewall's connection log"). Because the "primary function of the SMACC is to protect the management interfaces from attack," the connection attempts that a firewall or VPN may monitor would necessarily be made through the SMACC. Thus, the structures IV identified regarding the use of a firewall and/or a VPN do in fact disclose monitoring connection attempts through the management access controller."

IV also identified additional structures, other than a firewall / VPN, including "locally" performing at the SMACC "authentication and authorization of administrators." Resp. Br. at 26, *citing* '140 Patent, 6:48-52. IV further identified structures, in particular protocols such as TACACS+ and LDAP, used for authentication / authorization, where such protocols also monitor "connection attempts through the management access controller." Resp. Br. at 26-27.

13

As such, the Court should find the corresponding structures for this claim term to be the full set IV identified rather than Lenovo's improperly narrowed list.

9. "said . . . remote users"" (claim 1)

| LGL's Proposed Construction | IV's Proposed Construction |
|---|---|
| Indefinite | Plain and ordinary meaning |

Lenovo argues that according to Dr. Lee, its expert, a POSITA would not "use the word 'user' to refer to a computer or other device but would use the word 'agent' or 'client' or 'user' as a modifier to identify a device," and therefore claim 1 is indefinite for claiming a human being within a computer system. Reply Br. at 15. That the claim could have been drafted differently, however, is not the litmus test for indefiniteness. Regardless of what Dr. Lee's litigation inspired opinion is, even a layman understands that the claim as written does not claim a human being inside a computer, rather, it claims a remote administrator (a user) connecting to the system via a computer. As even Dr. Lee acknowledges, this interpretation is supported by the specification and intrinsic record. Lee Decl. at ¶70. It is the intrinsic record here that determines the scope and meaning of the claims, not Dr. Lee's conclusory views. *See Genuine Enabling Technology LLC, v. Nintendo Co. Ltd.*, 29 F.4th 1365, 1373 (Fed. Cir. 2022). Moreover, this is the exact reason that many courts in Texas and elsewhere have held that expert testimony regarding claim construction that is clearly at odds with the constructions mandated by the claims themselves, the written description and the prosecution history should be discounted. *See TQP Dev., LLC v. Wells Fargo & Co.*, 2013 WL 6247363, *5 (E.D. Tex., Dec. 2, 2013). *See also*, *Dyfan, LLC v. Target Corporation*, Case No. 6:19-cv-00179-ADA, Dkt. 57 (noting that an "expert's conclusory or unsupported assertions as to the meaning of a term are not [helpful]."). Therefore, given the facial implausibility of Lenovo's position, the Court should discount Dr. Lee's testimony and construe the disputed term according to its plain and ordinary meaning.

Lenovo's second argument that the term "said" modifies "remote users" is equally unsupported. Lenovo claims that *SIMO Holdings Inc. v. H.K. uCloudlink Network Tech. Ltd.*[5] provides support for such a premise. To the extent IV understands Lenovo's argument, that case supports the opposite finding. In *SIMO* the court found that the claim language "a plurality of" preceding a list of several items joined together by "and" meant that there had to be one or more of *each item*. *Id.* at 1376-77. Here there is no "plurality of" or equivalent language nor is the word "and" used to join items in a list. In fact, there is no list whatsoever. The term "one or more network services" is self-contained, meaning that "one or more" is modifying only "network services." *Compare* '140 Patent at 22:36, *with* '140 Patent at 22:44-45. Moreover, the modifier "or" is used - not "and." Accordingly, Lenovo's use of an ellipsis to create the term "said . . . remote users" is not one used in the asserted claims, and the term "remote users," to the extent it is necessary to construe, should be given its plain and ordinary meaning.

### C.    '835 Patent and '439 Patent

As Lenovo briefed these terms in the Zebra case (6:23-cv-00292) and incorporated those arguments in this case, for the reasons set forth in IV's Sur-reply Claim Construction Brief in the Zebra case, filed contemporaneously herewith, the Court should adopt IV's proposed constructions for each disputed claim term.

### II.    CONCLUSION

Therefore, for the reasons stated above IV respectfully asks the Court to reject Lenovo's proposed constructions and adopt IV's proposals instead.

March 26, 2024                                  Respectfully submitted,

                                                */s/ Karl Rupp*
                                                Karl Rupp

---

[5] 983 F.3d 1367 (Fed. Cir. 2021).

        State Bar No. 24035243
        **SOREY & HOOVER, LLP**
        100 N. 6TH Street, Ste. 502
        Waco, Texas 76701
        Tel: (903) 230-5600
        Fax: (903) 230-5656
        krupp@soreylaw.com

        Matthew D. Vella
        mvella@princelobel.com
        Robert R. Gilman
        rgilman@princelobel.com
        Jonathan DeBlois
        jdeblois@princelobel.com
        Brian Seeve
        bseeve@princelobel.com
        **PRINCE LOBEL TYE LLP**
        One International Place, Suite 3700
        Boston, MA 02110
        Tel: (617) 456-8000

        COUNSEL FOR PLAINTIFFS

CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the above and foregoing document has been delivered to all counsel of record via the Court's CM/ECF service on this 26th day of March, 2024.

                                              */s/ Karl Rupp*