IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LCC, *Plaintiffs,* | § § § § § | |
| v. | § § | CIVIL NO. 6:23-cv-307 |
| LENOVO GROUP LIMITED, *Defendant.* | | |

## MEMORANDUM OPINION AND ORDER

Before the court is Lenovo Group Limited's ("LGL") Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion"). ECF No. 62. Having considered the Motion, the subsequent briefing, and for the reasons stated herein, the court finds the Motion should be **DENIED**.

### I.    BACKGROUND

#### A.  FACTUAL BACKGROUND

Plaintiffs, Intellectual Ventures I LLC ("Intellectual Ventures I") and Intellectual Ventures II LLC ("Intellectual Ventures II") (together "IV"), are both Delaware limited liability companies having their principal place of business in Bellevue, Washington. ECF No. 1 at 1. IV "fosters inventions and facilitates the filing of patent applications for those inventions; collaborates with others to develop and patent inventions; and acquires and licenses patents from individual inventors, universities, corporations, and other institutions." *Id* at 3.

IV alleges that LGL is the parent company of subsidiaries accused of infringing patents held by IV. *Id* at 2. LGL asserts they are only a holding company headquartered in Hong Kong. ECF No. 62 at 6. These patents are related to remote device management communication systems, multiple clock domain microprocessors, orthogonal frequency division multiplexing (OFDM)

signal transmissions, and the automatic calibration of intra-cycle timing relationships. *Id* at 12–16.

## B. PROCEDURAL BACKGROUND

IV filed suit with this court on April 26, 2023, alleging LGL infringes five United States patents. ECF No. 1. LGL's motion to transfer this case to the Southern District of California (ECF No. 75 at 5) was denied on May 21, 2024. ECF No. 62 at 8. LGL filed a motion to dismiss for lack of personal jurisdiction on June 25, 2024. ECF No. 62. IV filed a response in opposition to LGL's motion to dismiss on September 17, 2024. ECF No. 75. LGL filed a reply in support of their motion to dismiss for lack of personal jurisdiction on October 1, 2024. ECF No. 77.

## II.     Legal Standard

### A. Specific Personal Jurisdiction

Federal Circuit law governs personal jurisdiction where "a patent question exists." *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375 (Fed. Cir. 2017). Both parties agree this court does not have general personal jurisdiction over LGL. Thus, the evaluation will proceed regarding specific personal jurisdiction. "[W]hether a defendant is subject to specific personal jurisdiction in the forum state involves two inquiries: first, whether the forum state's long-arm statute permits service of process and, second, whether the assertion of jurisdiction is consistent with due process." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Halliburton Energy Servs. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019). To satisfy due process, a defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326

U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "The Federal Circuit applies a three prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). The plaintiff bears the burden to show that the defendant has minimum contacts with the forum under the first two prongs. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). Upon a showing of minimum contacts, the defendant bears the burden to prove unreasonableness. *Id.*

The minimum contacts test is satisfied when the defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980)). Defendants establish sufficient minimum contacts when they "purposefully [avail themselves] of the benefits and protections of the forum state." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Defendants are subject to specific jurisdiction under the stream of commerce theory where "defendants, *acting in consort*, placed the accused [product] in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Id* at 1566. "Specific jurisdiction ... must be based on activities that arise out of or relate to the cause of action." *Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 346 (5th Cir. 2004).

"When the district court's determination of personal jurisdiction is based on affidavits and other written materials, and no jurisdictional hearing is conducted, the plaintiff usually bears only a prima facie burden." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015).

"To make that showing, [the plaintiff] need only demonstrate facts that, if true, would support jurisdiction over the Defendants." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 888 (Fed. Cir. 2008). "Unless directly contravened, [the plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Id.*

### B. Personal Jurisdiction Under Rule 4(k)(2)

A court may exercise jurisdiction if a plaintiff's claim (1) arises under federal law; (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) exercising jurisdiction is consistent with the United States Constitution and comports with Due Process. *See* Fed. R. Civ. P. 4(k)(2). The exercise of general jurisdiction is appropriate when the defendant is "essentially at home" in the forum state; for corporations, this occurs at a defendant's place of incorporation and its principal place of business. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). Due Process analysis under Rule 4(k)(2) "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018) (quoting *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Come de Equip. Medico*, 563 F.3d 1285, 1295 (Fed. Cir. 2009)).

### III. Discussion

### A. Specific Jurisdiction

At the outset, the Court notes that it has exercised personal jurisdiction over LGL under similar circumstances before. *See ACQIS LLC v. Lenovo Group Ltd., et. al.*, 572 F.Supp.3d 291 (W.D. Tex. 2021). Here, just as in *ACQIS*, LGL's alleged minimum contacts with the United

States include: (1) acting in consort with other Defendants to deliver products into the United States market under a stream of commerce theory, and (2) imputable contacts by other Lenovo defendants, including PC HK, because they serve as LGL's distribution agents. At this stage, the plaintiff must only make a prima facie showing there is personal jurisdiction by alleging facts, that if true, would support jurisdiction over the Defendant. LGL admitted IV made this showing in support of its motion to transfer for improper venue. ECF No. 75 at 4. Considering this court's prior finding of personal jurisdiction in *ACQIS* and LGL's prior admission of IV meeting its prima facie burden, the court proceeds with its personal jurisdiction analysis.

It is only necessary to look at LGL's contacts with the U.S. due to the application of Rule 4(k)(2). IV filed their suit claiming patent infringement pursuant to 35 U.S.C. § 271, *et seq*. ECF No. 1 at 2. Thus, the plaintiff's claim arises under federal law. LGL explicitly asserts it is not subject to general jurisdiction because it is a separate legal entity that does not do business in or direct any activities toward the United States. ECF No. 62 at 7–11. LGL has its principal place of business in Hong Kong and is organized under the laws of China. *Id* at 11. Consequently, under the application of Rule 4(k)(2) the court considers LGL's contacts with the U.S. as a whole.

1. **LGL has Sufficient Minimum Contacts**
   a. **LGL acts in consort with its subsidiaries to place products into the stream of commerce**

IV asserts that "LGL acts in consort with its hundreds of subsidiaries to put its products into the stream of commerce with the knowledge and intent that those products are sold in the United States and Texas." ECF No. 75 at 14. Acting in consort with its subsidiaries constitutes the necessary minimum contacts to find personal jurisdiction. IV bases this conclusion on the

holding in *Beverly Hills Fan* where the court found personal jurisdiction when "defendants, acting in consort, placed the accused [products] in the stream of commerce . . . knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1556 (Fed. Cir. 1994).

    IV argues that LGL intentionally exploits the U.S. market. Under the direction of LGL, "Lenovo purchased IBM's PC division…for the overt purpose of entering the U.S. PC market." *Id* at 15. This included the purchase of Lenovo PC HK. *Id*. "LGL then established Lenovo US as its domestic distributor and had it contract with Lenovo PC HK to procure and distribute Lenovo products throughout the United States…" *Id*. The contract between Lenovo US and Lenovo PC HK was executed by an LGL official. *Id*. Between 2019 and 2020 "Lenovo PC HK made $4 billion dollars in revenue from United States sales alone, much of which was transferred to LGL." *Id* at 16. IV asserts a similar relationship exists between LGL and the accused Motorola products. Motorola Mobility Holdings UK Limited is a wholly owned subsidiary by LGL. "To continue operating [Motorola UK] not only has a distribution agreement with LGL but also requires a guarantee from LGL promising to contribute additional capital in the event it cannot pay its bills." ECF No. 75 at 16.

    IV furthers that LGL treats itself and the subsidiaries accused of infringement, "as one entity in its day-to-day operations." ECF No. 75 at 7. LGL files one annual financial report that refers to a singular unit: "The Group". *Id* at 17. LGL "controls the business strategy, approves significant transactions, issues stock based on the value of its subsidiaries, sets up and controls the supply chain, and receives direct and indirect dividends from subsidiaries." *Id* at 7. Moreover, "LGL provides HR, IT and legal support, and further sets corporate policies for the

entire 'Group.'" *Id* at 17. IV concludes that based on these activities "LGL intentionally causes its products to be put into the stream of commerce knowing and intending that those products end up in the U.S. market, including Texas." *Id* at 18.

LGL argues the court lacks personal jurisdiction because they are solely a holding company headquartered in Hong Kong. ECF No. 62 at 6. LGL alleges that it "does not make or sell products and it does not avail itself of the laws of Texas. Incontrovertibly, it has not made, used, sold, offered for sale, or imported anything accused of infringement, in Texas or elsewhere. It has neither physical locations nor employees in Texas or elsewhere in the United States." *Id*. IV has accused legally distinct companies—Lenovo (United States) Inc. ("Lenovo US") and Motorola Mobility LLC ("Motorola Mobility")—of patent infringement. *Id*. Suit against Lenovo US and Motorola Mobility individually is proper in other venues, and IV is "haling a foreign defendant into an unforeseen court" in their suit against LGL. *Id*.

To address IV's assertions regarding their acquisition activities, LGL argues that because these actions pre-date infringement they "are not 'activities that arise out of or relate to the cause of action' and cannot support personal jurisdiction." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009). ECF No. 77 at 7. LGL further clarifies that the references to "Lenovo" in the reports utilized by IV "are not meant to refer to activities of LGL but instead reference LGL and 'its subsidiaries.'" ECF No. 77 at 6. LGL's shorthand reference to all subsidiaries as "The Group" does not negate the existence of a different legal corporate structure. *Id*. LGL asserts that its connection with its subsidiaries through providing HR, IT, and legal support does not relate to selling the accused products. ECF No. 77 at 8. Because LGL is merely a holding company "…it does not design, develop, manufacture, or distribute products or

services, or control any activities of the Company's subsidiaries..." and therefore is not subject to personal jurisdiction. *Id*.

Based on IV's allegations that LGL acquired companies to enter the U.S. market, LGL's prevailing corporate structure, and the revenue received by LGL from products sold in the U.S., the Court agrees that LGL acts in consort with Lenovo US and Motorola Mobility under a stream of commerce theory. These contacts result in LGL's purposeful availment towards the U.S. Even if the oversight and services provided by LGL to direct the actions of its subsidiaries are "corporate formalities," as they claim, this does not eliminate the possibility that such formalities give rise to knowledge of the destination of the accused products to the U.S. as required by the *Beverly Hills Fan* standard. IV has sufficiently alleged that the type of relationship LGL has with its subsidiaries results in LGL acting in conjunction with them and having knowledge that these products enter the U.S. stream of commerce. LGL maintains a degree of control over the distribution channels that result in revenue from products sold in the U.S., which likely meets due process requirements. Furthermore, the court's previous finding of personal jurisdiction in *ACQIS* under a stream of commerce theory makes it reasonable for LGL to anticipate being sued in this court.

### b. Purposeful contacts by subsidiaries are imputable to LGL

Alternatively, IV argues that LGL is subject to personal jurisdiction under an agency theory. A "corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). This theory "attributes specific acts to the parent because of the parent's authorization of those acts." *Cephalon, Inc. v. Watson Pharms., Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009). This court found in *ACQIS* that "LGL's control over PC HK and Lenovo US to establish, direct, and act as

distribution agents in the United States creates sufficient minimum contacts." *ACQIS LLC v. Lenovo Group Ltd., et. al.*, 572 F.Supp.3d at 307. IV asserts that finding remains true here. IV again references LGL's acquisition history and distribution agreements between Lenovo PC HK and Lenovo US. IV concludes that LGL has ultimate control over and specifically governs its subsidiaries.

LGL argues that IV improperly applies *ACQIS* and relevant Fifth Circuit precedent. LGL asserts that mere authorization of distributor or agent actions by a parent is insufficient to attribute those acts to the parent. ECF No. 77 at 10. LGL argues instead that instead, "[f]or an agency relationship to permit imputation of contacts, the parent company's control over the agent must pervade the agent's dealings with the forum." *Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*, No. 2:15-CV-2049-JRG, 2016 WL 6917272, at *2 (E.D. Tex. Sept. 1, 2016). LGL concludes that Texas agency law requires IV to show LGL "has both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task." *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008). ECF No. 77 at 10.

LGL's standard requires proving a right and a means to control. Yet, it does not require that right or means to be exercised, only that it exists. Moreover, LGL's argument under this standard still hinges on the assertion that they have no control over the subsidiaries' design, development, manufacturing, etc. This factual dispute is still viewed in the light most favorable to the nonmovant. Consequently, if LGL directs the activities of its subsidiaries in the manner alleged by IV, this degree of control rises to the level of having the right to assign tasks and control the means of the process by which the agent will accomplish that task.

Considering this court's previous finding of personal jurisdiction over LGL, LGL's prior admission that IV has met its prima facie burden, and taking IV's factual allegations as true, the court finds that LGL has sufficient minimum contacts with the U.S. under a stream of commerce and agency theory.

### 2. IV's Claims Arise out of or Relate to LGL's Contacts

IV alleges that LGL has infringed five U.S. patents it holds. The accused products have been manufactured and distributed by LGL owned subsidiaries across the U.S. Thus, IV's claim arises out of or relate to LGL's contacts with the U.S., placing the accused products in the stream of commerce.

### 3. The Exercise of Jurisdiction is Reasonable and Fair

The court finds that the exercise of a personal jurisdiction over LGL is reasonable and fair. Primarily, it was foreseeable to LGL that this court has personal jurisdiction over it because of the personal jurisdiction finding by this court in *ACQIS*.

To evaluate whether the exercise of personal jurisdiction is reasonable and fair, the Court weighs five factors: (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering substantive social policies. *Patent Rts. Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010) (citing *Burger King*, 471 U.S. at 476-77).

LGL argues that the burden on them to litigate in Texas would be "severe and unreasonable." ECF No. 62 at 23. LGL furthers that they do not conduct any business in Texas, and they are headquartered thousands of miles away in Hong Kong, and there is no reason for them to have foreseen it would be haled into court here. *Id*. Regarding the second factor, LGL

argues Texas has no interest in resolving this dispute because IV is a Delaware LLC with its principal place of business in Washington and does not conduct any business in Texas. *Id*. LGL concludes that efficiency dictates no finding of personal jurisdiction because suit is proper against Lenovo US and Motorola Mobility individually and IV can seek relief from these parties in the proper venue for those respective suits. *Id* at 24.

The court finds that while LGL may be burdened by defending in a foreign forum, "defense of a lawsuit in a foreign tribunal [has become] less burdensome." *Beverly Hills Fan. Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1560 (Fed. Cir. 1994) (quoting *World-Wide Volkswagen*, 444 U.S. at 294). Moreover, it was foreseeable that LGL would be subject to personal jurisdiction in this court. This court determined it had personal jurisdiction over LGL in *ACQIS LLC v. Lenovo Grp. Ltd*. Moreover, The Eastern District of Texas determined it had personal jurisdiction over LGL in *Universal Connectivity Techs. Inc. v. Lenovo Grp. Ltd*.

Cases that offend traditional notions of fair play and substantial justice are "limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills*, 21 F.3d at 1568. This case is not one of the rare cases. Texas has an interest in discouraging injuries that occur within the state. LGL does not meet their burden to prove the maintenance of this suit would be sufficiently unfair or unreasonable. This court finds that exercising jurisdiction of LGL is fair and reasonable.

### IV. CONCLUSION

LGL's Motion to Dismiss for lack of Personal Jurisdiction is **DENIED**.

SIGNED this 15th day of September, 2025.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE